## No. 20509.

SCHOOL DISTRICT #4, BACA COUNTY, *v.* LOU ANN PROPES.
(392 P.2d 292)

Decided May 18, 1964.

Messrs. SCHMIDT & SCHMIDT, for plaintiff in error.

Messrs. ALLOTT & ROGERS, for defendant in error.

*In Department.*

Opinion by MR. CHIEF JUSTICE MCWILLIAMS.

MRS. PROPES brought a breach of contract action against the School District, alleging in her complaint that

the School District unlawfully terminated her teaching contract on January 28, 1960, and claiming as the damages resulting from said breach her loss of salary.

By answer the School District denied that it in anywise *terminated* the teaching services of Mrs. Propes and upon trial it developed that the School District's theory of the case was that on or about January 28, 1960, Mrs. Propes voluntarily abandoned her teaching contract. Thus, the pivotal issue before the trial court was whether Mrs. Propes did herself abandon the contract or on the contrary was she unlawfully dismissed by the School District. In the vernacular, did Mrs. Propes "quit" or was she "fired"?

A brief resume of the evidence adduced upon trial will serve to bring the very limited issue before us into better focus. The written contract between Mrs. Propes and the School District provided that Mrs. Propes was to render teaching services for a period of time commencing September 1, 1959, and ending June 1, 1960, at a salary of $3300, this amount to be paid in 12 monthly installments. The contract also contained a provision that "no teacher shall be dismissed without good cause shown, which includes a hearing."

In January 1960 it apparently became quite obvious that Mrs. Propes was pregnant. Mrs. Propes and the school superintendent in early January 1960 had discussion as to what effect, if any, the fact of Mrs. Propes' pregnancy would have on her ability to render the services called for by the contract. The record discloses that Mrs. Propes and the school superintendent were in rather sharp disagreement as to just what was said in their discussion.

The gist of Mrs. Propes' testimony was that she did not quit or otherwise abandon her contractual duties and rights. Specifically, she stated that she "needed the money" and would teach "as long as possible." According to Mrs. Propes, the school superintendent stated, however, that she could continue to teach *only* until the

end of the semester (January 28, 1960), and that she would then be "replaced."

The gist of the school superintendent's testimony was that he did not terminate Mrs. Propes' services. He testified that Mrs. Propes conceded to him she could not "finish the year" and that he thereupon "suggested" that "if you are going to quit it sure would be nice . . . [to] do it around the [end of] the semester."

The evidence before the trial court also established that on January 12, 1960, the School District hired a new teacher to take over the teaching duties of Mrs. Propes at the start of the second semester, i.e. January 31, 1960.

Subsequent to her discussion with the school superintendent, Mrs. Propes remained in her classroom and performed the services called for by the contract until January 28, 1960, this being the last day of the first semester. Mrs. Propes went on to testify that on January 31, 1960, the first day of the new semester, upon the advice of her counsel she "reported for work." She quoted her elementary school principal as stating on this particular occasion that there was absolutely "nothing for her to do," a replacement then being in her [Mrs. Propes'] second grade classroom. The principal did not recall any such conversation, and as far as he was concerned Mrs. Propes appeared for the sole purpose of "checking out."

The trial court, sitting without a jury, found that Mrs. Propes "did not abandon her job" but was unlawfully discharged, and entered judgment in her favor for $1100. By writ of error the School District seeks reversal of this judgment, contending "that by all the evidence adduced . . . [Mrs. Propes] . . . terminated her contract of employment after her conversation with . . . [the school superintendent] and at his suggestion . . . ."

The issue now to be resolved is whether there was competent evidence to support the several findings of the trial court. We hold that there was and the foregoing recitation of the evidence adduced upon trial is

believed to clearly demonstrate such to be the case. This then is but another instance of a controverted issue of fact being resolved by the fact finding body, in this case the trial judge. As a reviewing court we are, of course, not at liberty to disturb the finding, there being competent evidence to support it. *Andersen-Randolph Co. v. Taylor,* 146 Colo. 170, 361 P.2d 142.

The School District makes minor complaint about the amount of the judgment, arguing that if Mrs. Propes is entitled to judgment it should be in the amount of $458.33. This particular dispute arises from the fact that although Mrs. Propes was to render services for a nine months period of time, her salary for this nine months of work was to be paid in twelve monthly installments.

In our view the central issue still pertains to various facts and circumstances leading up to the "termination" of Mrs. Propes' services on January 28, 1960. In this regard it having been determined that Mrs. Propes was unlawfully dismissed, under the evidence adduced at trial she was entitled to the balance due under the contract. Actually the judgment as entered by the trial court was for less than the full amount of this unpaid balance, Mrs. Propes only making claim for her salary through April 1960. Hence, without any need for getting into the field of mathematics, it is deemed sufficient to merely say that the trial court did not err in fixing the amount of the judgment at $1100.

Judgment affirmed.

MR. JUSTICE DAY and MR. JUSTICE PRINGLE concur.